KENNEDY, Justice.
The defendant, William Mancil, a/k/a Bill Mancil, appeals the judgment in favor of the plaintiff, Jeffrey Steel Company, Inc. The case was presented ore tenus, without a jury. We affirm.
The issues are (1) whether Jeffrey Steel had a security interest in certain steel products that it seized from Mancil, who was not a party to the alleged security agreement and (2) whether Mancil waived his rights to a pre-judgment hearing pursuant to Rule 64(b)(2)(B), A.R.Civ.P., by proceeding to a trial on the merits.
The trial court did not make any specific findings of fact. The essential facts in the record are as follows: R.D. Helms was in the business of manufacturing and selling truck trailers in Brewton, Alabama. The business was incorporated as “Dart Trailers, Inc.” Helms was the principal owner of the business. Mancil was engaged in a similar business and had known Helms for a number of years. Helms testified -that Mancil had helped Helms establish the business by providing false credit references to .Helms’s creditors.
In August 1982, Jeffrey Steel accepted a credit application from Dart Trailers. The credit account was subsequently approved, and Dart Trailers purchased approximately $80,000 worth of steel on credit. Jeffrey Steel received Helms’s personal guaranty as well as the corporate guaranty for the credit balance. The credit sales were supported by a purchase agreement, signed by a Dart Trailers representative, describing each piece of steel sold. The agreement contained the following terms:
“15. The products shall be kept at Buyer’s place of business as shown on *90 the front of this form until Seller’s security interest is terminated.
“16. Until such time as Seller has been paid in full for the products listed on the front side, Buyer agrees:
“A. To keep the products free from any adverse security interest;
“B. To permit Seller to take possession of the products remaining in possession of Buyer or in the possession of any person other than a purchaser from Buyer in the ordinary course of business;
“C. Seller may enter Buyer’s premises without legal process for the purpose of examining the products remaining in Buyer’s possession and permit Seller to have access to the records of Buyer in order to determine the disposition of any of the products subject to this agreement;
“D. To keep the products fully insured at Buyer's expense; and
“E. That in the event Buyer defaults in the payment due herein or fails to comply with any of the terms hereof, Seller or any officer of the law may take immediate possession of the products without demand, and for this purpose, may enter the premises where the products may be located and remove them.”
Soon after the credit sale, Jeffrey Steel discovered that the financial information that Helms had provided was fraudulent and became concerned that Dart Trailers would default, because the account was past due. In October 1982, Jeffrey repossessed some of the steel from Dart Trailers and learned that the remainder of the steel had been transported from the premises of Dart Trailers to Maneil’s place of business. Concerning the circumstances that preceded the transfer of the steel to Mancil, the evidence showed that Mancil held two bad checks that Helms had written to him, totaling approximately $20,000. Mancil testified that he knew that Helms had a cash-flow problem at Dart Trailers. There was also evidence that Mancil and Helms agreed that the steel would be transferred to Mancil for cash and/or satisfaction of the two bad checks. It is unclear whether Mancil had actual knowledge of any security interest in the steel that he received from Dart Trailers.
On October 20, 1982, Jeffrey Steel filed a complaint against Mancil for recovery of chattels in specie, with a motion for immediate writ of seizure supported by the affidavit of the president of Jeffrey Steel and by a bond. The trial court granted the motion the same day, and a writ of seizure was issued. On October 22, 1982, Jeffrey Steel, under the supervision of the sheriff’s department, seized the steel from Mancil. The writ included an itemized list of steel products. The sheriff’s deputies verified the list as each piece of steel was loaded on the trucks and removed from Mancil’s premises.
On October 25, 1982, Mancil filed a request for a prejudgment hearing pursuant to Rule 64(b)(2)(B), A.R.Civ.P. Jeffrey Steel moved to strike the motion for prejudgment hearing. However, Mancil did not receive a prejudgment hearing within fifteen days- from the date of seizure, as required by Rule 64. The case was tried seven years later before the trial court, in April 1989. The trial court, hearing ore terms evidence, ruled that Jeffrey Steel was entitled to recover from Mancil the property identified in the complaint and that Mancil was not entitled to recover on his counterclaim for damages, which alleged conversion. Mancil appealed.
■ I.
Mancil argues, inter alia, that Jeffrey Steel did not have a valid security interest in the steel. We disagree.
Code 1975, § 7-9-203, provides for the creation of a security interest as follows:
“(1) ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
“(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and
“(b) Value has been given; and
“(c) The debtor has rights in the collateral.
*91 “(2) A security interest attaches when it becomes enforceable against the debt- or with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.”
(Emphasis added.)
The evidence supports a finding that a security interest was created by a signed security agreement.
However, § 7-9-307 provides that a “buyer in the ordinary course of business ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.” Section 7-1-201(9) defines a “buyer in the ordinary course of business”:
“[That term refers to] a person who in good faith without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a -person in the business of selling goods of that kind but does not include a pawn-broker. All persons who sell minerals or the like (including oil and gas) at well-head or mine shall be deemed to be persons in the business of selling goods of that kind. ‘Buying’ may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.”
(Emphasis added.) For Mancil to be protected under this exception, it must be proved that Dart Trailers was in the business of selling pieces of steel. The evidence supports no other conclusion than that Dart Trailers was in the business of manufacturing and selling truck trailers, not the business of selling pieces of steel. Therefore, we conclude that, based on the evidence, the trial court could have found that Jeffrey Steel held a valid security interest in the steel and that Mancil was not a buyer in the ordinary course of business.
II.
Mancil also argues that his failure to receive a Rule 64(b)(2)(B) prejudgment hearing requires that the judgment be reversed. We disagree. The Committee Comments to Rule 64 state:
“[u]nder ARCP 64(b)(2)(B), when a defendant requests a hearing, the writ expires unless a hearing is held within 15 days from the seizure and, after such hearing, the court orders the seizure to remain in effect. This procedure puts the burden of getting the matter set down for a hearing on the party who seeks the fruits of the court-ordered seizure.”
In this case, the burden of getting a hearing set would have been on Jeffrey Steel. The record indicates that on January 4, 1983, a hearing date was set for January 11, 1983, on Jeffrey Steel’s motion to strike Mancil’s demand for a prejudgment hearing. That motion to strike was filed October 26, 1982. However, there is no evidence to show that such a hearing was conducted. We note that this case originated in 1982 and was finally tried in 1989. Mancil certainly had the right to petition this Court for a writ of mandamus to compel the trial court to conduct a Rule 64 prejudgment hearing; however, he did not. Although the disposition of this case by the trial court was procedurally flawed, we conclude that during the seven-year interval, Mancil waived his right to a prejudgment hearing in favor of a trial on the merits of the complaint and the counterclaim.
Accordingly, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.